# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MAYER, BROWN, ROWE & MAW LLP,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 04-2187 (RMC)** |
| **INTERNAL REVENUE SERVICE,** | ) ) | |
| **Defendant.** | ) ) ) | |

## MEMORANDUM OPINION

The law firm of Mayer, Brown, Rowe & Maw LLP ("Mayer Brown") submitted three requests for records to the Internal Revenue Service ("IRS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. When the IRS failed to respond, Mayer Brown instituted this suit. Thus prompted, the IRS answered the requests, produced approximately 7,000 documents in whole or in part, and withheld about 23,000 documents. The parties now dispute, through cross motions for summary judgment, whether the scope of the search for responsive records was adequate and whether the IRS has properly relied upon FOIA Exemptions 5 and 7(E). Each motion will be granted in part and denied in part.

## I. BACKGROUND FACTS

Mayer Brown submitted FOIA requests on January 6, 2004; March 1, 2004; and February 16, 2005. These requests were directed at obtaining information concerning two revenue rulings, certain settlement guidelines, and an official IRS Notice. The FOIA requests sought "all materials subject to disclosure, including but not limited to any and all background files,

pertaining to" Revenue Ruling 99-14; Revenue Ruling 2002-69; the Appeals Coordinated Issue

Program Appeals Settlement Guidelines for Lease-in/Lease-Out (LILOs), UIL 9307-07-00 (February

23, 2004); and IRS Notice 2005-13 (February 11, 2005).  When no responses were received, Mayer

Brown filed this suit on December 17, 2004.  The IRS produced documents responsive to the 2004

FOIA requests in April 2005.  Declaration of Deborah Lambert-Dean ("Lambert-Dean Decl.") ¶ 19.

It produced documents responsive to the 2005 FOIA request in August 2005.  *Id.* ¶ 24.  As noted

above, the IRS declined to release the greater bulk of responsive documents in reliance on various

exemptions under FOIA.

   The documents at issue concern the tax treatment accorded by the IRS to LILOs, or

lease-in/lease-out transactions.  Under these LILOs, a transit agency would lease transit equipment

to a lessor for an extended period under a "Headlease."  The transit agency would then lease the

property back under a Lease for a period significantly shorter that the term of the Headlease.  *See*

Memorandum of Points and Authorities in Opposition to the Internal Revenue Service's Motion for

Summary Judgment and in Support of Mayer Brown's Cross-Motion for Summary Judgment ("Pl.'s

Mem."), Declaration of Adam Sloane ("Sloane Decl."), Ex. D (Appeals Settlement Guideline All

Industries, Losses Claimed and Income to Be Reported from Lease In/Lease Out Transactions, UIL

9307.07-00, at 3-5 (Draft June 6, 2003).  According to Mayer Brown, the LILO structure was used

as a financing method by transit agencies in a number of cities, including San Diego, Washington,

D.C., and Dallas, among others.  Pl.'s Mem. at 5.  Following an IRS revenue ruling that disallowed

deductions for LILO transactions, lessees and lessors increased the use of sale-leaseback structures.

In a sale-leaseback (called sale in/lease out, or "SILO" by the IRS), the original owner of transit

equipment would sell it and then lease it back.

As noted above, Mayer Brown sought information regarding two revenue rulings, settlement guidelines, and an IRS Notice.  Specifically, in Revenue Ruling 99-14, 1999-1 C.B. 835, issued in March 2002, the IRS disallowed deductions claimed with respect to LILO transactions. In October 2002, the IRS issued Revenue Ruling 2002-69, 2002-2 C.B. 760, which modified and superseded Revenue Ruling 99-14 but maintained the same position disallowing deductions.  Then in February of 2004, the IRS released Appeals Settlement Guidelines on the LILO issue.  Legislation which substantially increased the penalties and sanctions for failing to comply with tax shelter rules was enacted on October 22, 2004.  *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (codified in scattered sections of 26 U.S.C.).  On February 11, 2005, the IRS issued Notice 2005-13, which disallowed  tax deductions with respect to SILO transactions.  *See* Sloane Decl., Ex. G.  The IRS has never published Appeals Settlement Guidelines for SILO issues.

According to Mayer Brown, the IRS has audited or is in the process of conducting audits of substantially all taxpayers that engaged in LILO and SILO transactions.  Both parties agree that the total amount at issue will likely be in the billions of dollars.  *See* IRS's Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment and in Reply to Plaintiff's Memorandum in Opposition to IRS's Summary Judgment Motion ("Def.'s Opp.") at 7; Pl.'s Mem. at 11.

A.   The LILO Requests

In its first FOIA request, dated January 6, 2004, Mayer Brown sought "[a]ll material subject to disclosure, including but not limited to any and all background files, pertaining to the following rulings:  Revenue Ruling 99-14, 1999-1 C.B. 835 and Revenue Ruling 2002-69, I.R.B. 2002-44."  *See* Lambert-Dean Decl., Ex. A.  The second FOIA request from Mayer Brown was dated

March 1, 2004, and asked for "[a]ll materials subject to disclosure, including but not limited to any and all background files, pertaining to the following IRS release: Appeal Coordinated Issue Program Appeals Settlement Guidelines for Lease-in/Lease-out (LILOs), UIL 9307-07-00, February 23, 2004" ("LILO ASG"). *Id.,* Ex. B. These requests were assigned to Deborah Lambert-Dean in the Office of Chief Counsel, Disclosure & Privacy Law, Branch 2, IRS, for search purposes on January 4, 2005, only after Mayer Brown had already filed suit. *Id.* ¶¶ 1 & 9.

Ms. Lambert-Dean began her search by contacting the Office of Governmental Liaison and Disclosure ("GLD"), which would have primary responsibility for responding to requests of the type received from Mayer Brown. *Id.* ¶ 11. She discovered that GLD had other, similar, requests pending and had already released 189 pages of redacted records to Miller & Chevalier, another law firm that had filed an earlier FOIA request. *Id.* ¶¶ 11 & 12. Ms. Lambert-Dean reviewed these records, agreed with the redactions, and released them to Mayer Brown. *Id.* ¶ 12.

Ms. Lambert-Dean also obtained the "CASE-MIS" number[1] for the LILO ASG, allowing her to identify the project in a computer data base and learn which offices had worked on the LILO ASG. *Id.* ¶ 13. She then sent an email request to search for responsive documents regarding the LILO ASG request to the Office of Chief Counsel and Deputy Chief Counsel; Office of Associate Chief Counsel, Income Tax and Accounting ("Counsel ITA"); the Office of the Division Counsel, Large and Mid-Size Business ("Counsel LMSB"); the Office of the Assistant Chief Counsel, Administrative Provisions and Judicial Practice ("Counsel APJP"); and the Office of Associate Chief Counsel, Financial Institutions and Products ("Counsel FIP"). She asked each

---

[1] "CASE-MIS is the management information system used to track work assignments within the Office of Chief Counsel," IRS. *Id.* ¶ 12.

of these offices to search for "all background, administrative and legal materials, including but not limited to internal IRS documents, memoranda, analyses, etc., underlying the Appeals Settlement Guidelines on 'LEASE IN/LEASE OUT (LILOs) (UIL 9300.07.00),' dated 2/23/04." *Id.* ¶ 14.  In addition, she asked that the scope of the search include all documents created or considered in the drafting of the LILO ASG and asked the recipients to forward the email to any other offices or persons who may have worked on the LILO ASG and who were not copied on the initial email.  *Id.*

By email on January 6, 2005, Ms. Lambert-Dean contacted the Legal Processing Division within the Office of Associate Chief Counsel, Procedure and Administration ("LPD"), to determine whether it had been involved in processing any requests related to Revenue Rulings 99-14 or 2002-69.  *Id.* ¶ 15.  LPD determined that it was in the process of gathering documents associated with both revenue rulings in response to other, similar FOIA requests.  *Id.* ¶ 16.  Ms. Lambert-Dean learned from LPD which persons in Counsel LMSB and Counsel ITA were performing the searches and she contacted them to request copies of all responsive documents for the Mayer Brown FOIA request.  *Id.*  She also contacted David F. P. O'Connor, a Special Counsel in the Office of Chief Counsel, to conduct a search of that office.  *Id.*

LPD provided documents related to the revenue rulings in mid-February 2005.  *Id.* ¶ 17.  By the end of March 2005, Ms. Lambert-Dean had obtained additional documents relating to the revenue rulings from Counsel ITA, Counsel LMSB, and the Office of Chief Counsel.  *Id.*

All told, Ms. Lambert-Dean received 8,653 pages responsive to Mayer Brown's requests concerning the LILO ASG and the LILO revenue rulings.  *Id.* ¶ 18.  She reviewed the documents as they were sent to her to determine their disclosure treatment and, on April 15, 2005, provided the Department of Justice (defending this case) with 795 pages to be released in part and

1,115 pages to be released in whole. *Id.* ¶ 19. Ms. Lambert-Dean withheld the remaining responsive documents, based on her analysis that they were subject to one or more exemptions under FOIA. *Id.*

B. The SILO Request

Mayer Brown submitted a FOIA request to the IRS on February 16, 2005, asking for "[a]ll material subject to disclosure, including but not limited to any and all background files, pertaining to" Notice 2005-13, issued February 11, 2005, and titled "Tax-Exempt Leasing Involving Defeasance" (the "SILO Notice"). *Id.* ¶ 20, Ex. E. Ms. Lambert-Dean first heard about the SILO Notice request when she was copied on an email from Mr. O'Connor, who was searching for responsive documents in the Office of Chief Counsel. *Id.* ¶ 21. Upon learning that the lack of response to the SILO Notice request had been added to this litigation, Ms. Lambert-Dean sent an email to the same group identified by Mr. O'Connor and requested that they commence a search for responsive documents. *Id.* Her request was dated April 28, 2005. *Id.* She asked each of the email recipients to notify her if other offices or persons had worked on the SILO Notice and, pursuant to responses to that question, she contacted personnel with Counsel APJP, Office of Associate Chief Counsel, International ("Counsel International"), Counsel FIP, and Office of the Division Counsel, Tax Exempt and Government Entities ("Counsel TEGE"). *Id.* She also contacted LPD and asked for all documents from the "official" file for the SILO Notice. *Id.*

Beginning in May 2005 and continuing through early August of that year, Ms. Lambert-Dean received responsive documents from LPD, Office of Chief Counsel, Counsel ITA, Counsel LMSB, Counsel TEGE, Counsel FIP, Counsel International, and Counsel APJP, totaling approximately 26,660 pages. *Id.* ¶ 22. Of these, twenty-six binders of documents "consist in their

entirety of material compiled during tax examinations of third party taxpayers involved in SILO transactions," with an estimated 11,250 pages of documents. *Id.* ¶ 23. Ms. Lambert-Dean read the remaining 14,410 pages of documents and made initial determinations with regard to their release to Mayer Brown; her Branch Chief, Donald M. Squires, performed a final review of her determinations. *Id.* ¶ 24.

On August 10, 2005, Ms. Lambert-Dean provided 4,962 pages to DOJ, to be released to Mayer Brown in regard to the SILO Notice; 2,457 to be released in part and 2,505 to be released in their entirety. *Id.*

## II.  LEGAL STANDARDS

### A.  Jurisdiction

Federal district courts have original jurisdiction over civil actions arising under federal statutes. 28 U.S.C. § 1331. Here, Mayer Brown brought suit under the Freedom of Information Act, 5 U.S.C. § 552. As this case presents a question of federal law, this Court has original jurisdiction.

### B.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13  (D.D.C. 1980).  In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

### III.  ANALYSIS

Mayer Brown seeks an order finding the IRS's search inadequate; requiring the IRS to disclose withheld documents or to supplement its claims that the deliberative process privilege covers documents that are not predecisional drafts;[2] requiring the IRS to disclose material for which

---

[2] These documents are described in paragraphs 38 and 39 of the Lambert-Dean Declaration:

38.  In addition to draft published and other guidance withheld in its

the IRS asserts FOIA Exemption 7(E); requiring the IRS to disclose seventeen pages of documents

that were created after the decisions at issue;[3] and requiring the IRS to provide a detailed explanation

for its claims that exempt material cannot be segregated from non-exempt material.   Pl.'s Reply at

---

> entirely, there are numerous documents that reflect the opinions and
> recommendations of agency personnel with regard to what positions should
> be reflected in the final version of this guidance.   Many of these
> "discussions" are in emails.   Because almost every page of email
> transmissions contains some of this protected material, a very small
> segment of examples representative of this category of documents withheld
> either in full or in part under FOIA exemption 5 and the deliberative process
> privilege are in the page selection below:
>
> (a) LILO Documents: Pages 1197-1200; 1201-1202; 1446-1447;
> 1475, 1812, 2379-80, 2445-46 and 2967-69.
>
> (b) SILO Documents: Pages 3405, 3424-25, 3426-34, 3465 and
> 5664.
>
> 39.   Other substantive discussion reflecting opinions and
> recommendations with respect to this guidance and with respect to
> deliberations within the agency as to how best to address LILO and SILO
> transactions can be found in memorandum [sic], handwritten notations,
> charts, etc.   Representative examples of this category of deliberative
> predecisional information can be found in the following pages:
>
> (a) LILO Documents: Pages 851-57, 875-[]76, 1437-39, 1476-83,
> 2541-50, 3046-47, 3086-89, 5589-92, 5593-5602, 5670-71, 5690-95, 5791-
> 93,  5976-79,  6011-16,  6310-85,  6506-09,  6916-19,  6930-31,  6947-50,
> 7058-61, 7208-11 and 7445-47.
>
> (b) SILO Documents: Pages 815-18, 1682-83, 1760-61, 3346-55,
> 3370-74, 3384-85, 3390-3403, 3407[-]08, 3413-14, 5489-5500, 5517-20,
> 5522-25, 5655-67, 5791-94, 5828-33, 6626-34, 8354-59, 8709-13, 11,492-
> []519, 11,659-75 and 14,241-49.

Lambert-Dean Decl. ¶¶ 38-39.

[3]  *See* Lambert-Dean Decl. ¶ 18 n.2 ("There are also 17 pages of documents I determined to
be non-responsive to the request for documents related to the LILO ASG because they were created
after the date of the issuance of the LILO ASG."),

1-2.[4]  The burden is on the IRS to support is decision.  *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 15 (D.D.C. 2004) (citing 5 U.S.C. § 552(a)(4)(B)).  The Court must determine this matter de novo.  *Id.*

A.  Scope of the Search

Mayer Brown assails the scope of the IRS search for responsive records as "defective in one essential respect: it was based on an interpretation that limited the request to predecisional, deliberative documents."  Pl.'s Reply at 3.[5]  Mayer Brown insists that its request did not seek only "background" documents and did not seek only predecisional, deliberative documents.  The requests were all framed in the same language, asking for "[a]ll material subject to disclosure, including but not limited to any and all background files" concerning the revenue rulings, LILO ASG, and the SILO Notice.  The Court concludes that the IRS did not violate FOIA when it read this request more narrowly than intended by the requester.  There is no evidence of bad faith or that the IRS intended to deprive Mayer Brown of appropriate documents, merely that Ms. Lambert-Dean focused on the specific kinds of documents requested – "background files" – and, as to them, attempted to locate and review "[a]ll material subject to disclosure."

Mayer Brown protests that IRS regulations require the agency to make inquiry of a requester if a request is vague or overbroad.  *See, e.g.*, 26 C.F.R. § 601.702(c)(5)(i) ("Where the requester does not reasonably describe the records being sought, the requester shall be afforded the

---

[4] Along the way, Mayer Brown has withdrawn requests for records as to which the IRS asserts FOIA Exemptions 2, 3, and 6, as well as draft documents, work product, and attorney-client privileged material as to which the IRS asserts FOIA Exemption 5. Pl.'s Mem. at 11-12; Pl.'s Reply at 1-2.

[5] Other elements of Mayer Brown's concerns with the scope of the search have been alleviated by the two Declarations submitted by Ms. Lambert-Dean.

opportunity to refine the request."); 26 C.F.R. § 601.702(c)(1)(i) ("IRS shall promptly advise the requester in what respect the request or appeal is deficient so that it may be resubmitted or amended for consideration in accordance with this section.").  It argues that the IRS failed to comply with its own regulations and thereby failed to perform an adequate search.  The problem with Mayer Brown's argument is that it assumes that Ms. Lambert-Dean thought that the requests submitted by Mayer Brown were vague and that she needed clarification.  There is no evidence that Ms. Lambert-Dean needed clarification regarding Mayer Brown's request.  An agency is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents."  *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).  Instead, it appears that she had multiple requests for essentially the same materials and treated them similarly.

However, since Mayer Brown now has explained the broader scope of its intended request and the IRS has identified seventeen documents that were responsive but for their dates after the decisions at issue, the Court will order the IRS to review those seventeen documents and release them to Mayer Brown, if appropriate, under FOIA.  To the extent that the IRS determines that these documents should be withheld in whole or in part, the IRS shall provide an itemized index explaining the basis for withholding them.

Summary judgment will be granted to the IRS on the scope of the search.

B.  FOIA Exemption 5 – Deliberative Process Privilege

FOIA Exemption 5 , 5 U.S.C. § 552(b)(5), protects from disclosure documents that are covered by the deliberative process privilege.  FOIA exemptions such as this one must be narrowly construed.  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).  The deliberative process privilege shields only government materials that are both predecisional and deliberative.  *Tax*

*Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (citing *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988)).  To come within this exemption, the agency must show that the materials were created before the adoption of an agency policy and reflect the "give-and-take of the consultative process." *Id.* (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

In this case, Ms. Lambert-Dean attests that approximately 15,701 pages are so exempt.  Second Declaration of Deborah Lambert-Dean ("Second Lambert-Dean Decl.") ¶ 9.  Of these, approximately 8,245 constitute drafts of published guidance and are no longer at issue, as Mayer Brown no longer requests them.  Pl.'s Reply at 2.  The remainder total approximately 7,456 pages.

Faced with a mountain of responsive documents that it claims are exempt from disclosure, the IRS has declined to explain, on a document-by-document basis, how each of them is exempt under Exemption 5's protection for deliberative process records.  Instead, as quoted *supra* at note 2, Ms. Lambert-Dean has provided a broad description of email traffic "that reflect[s] the opinions and recommendations of agency personnel with regard to what positions should be reflected in the final version of this guidance."  Lambert-Dean Decl. ¶ 38.  "Other substantive discussion reflecting opinions and recommendations . . . can be found in memorandum [sic], handwritten notations, charts, etc." *Id.* ¶ 39.  Ms. Lambert-Dean only identified "[r]epresentative samples" of each category of "deliberative predecisional information" by Bates number on the document. *Id.* ¶¶ 38-39.

The IRS has not provided enough information for the Court to rule on its claims that Exemption 5 protects the 7,456 documents at issue.  While the parties fiercely debate whether, and

the extent to which, an agency can rely on categorical statements to protect large numbers of documents that are not individually described, that issue is at best premature. When an agency claims a FOIA exemption, it must provide sufficient information for the outsider – the requester and the court – to make a reasoned determination of whether the claim is legitimate. This Court is not able to determine whether Exemption 5 applies to the withheld documents because the descriptions are extremely broad and generic, the agency identifies only "representative samples," and the Court does not have the Bates-stamped documents, with or without redactions.

Ms. Lambert-Dean explains, with some force, the time and work it would take to prepare a document-by-document *Vaughn*[6] index. While the burdensomeness of FOIA may be onerous at times, the burden alone does not constitute an exemption. Certainly the IRS can use some level of categorization to explain the bases for its exemption claims, but the paucity of information currently provided is distinctly insufficient. While categorical descriptions are permitted, categories must be "functional" to permit the Court "to trace a rational link" between the nature of the document and the claimed exemption. *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986). The Court must perform an independent evaluation of the claims and cannot do so here.[7] Accordingly, the parties' cross motions for summary judgment will be denied without prejudice on this point, and the IRS will be given an opportunity to submit a more specific and thorough

---

[6] *Vaughn v. Rosen*, 484 F.2d820, 827 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification).

[7] Although the Second Lambert-Dean Declaration addresses specifically why the IRS claims the deliberative process privilege for the 8,245 drafts of published guidance, *see* Second Lambert-Dean Decl. ¶¶ 9-10, it fails to enlarge in any way upon the vague descriptions of the remaining 7,456 pages that were contained in the Lambert-Dean Declaration as initially submitted.

declaration.

C.  FOIA Exemption 7(E) – Information Compiled for Law Enforcement Purposes

FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), provides an exemption from disclosure for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigation or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *See Tax Analysts v. I.R.S.*, 294 F.3d 71 (D.C. Cir. 2002) (Exemption 7(E) permits the withholding of guidelines for law enforcement, not just records or information regarding an individual violation of the law).  Because the IRS is an agency that combines administrative and law enforcement functions, it is entitled to less deference when evaluating its claim that information was compiled for law enforcement purposes.  *Id.* at 77 (noting that the IRS is "a mixed-function agency, subject to an exacting standard when it comes to the threshold requirement of Exemption 7").  "If courts accept a mixed-function agency's claims of 'law enforcement purpose' without thoughtful consideration, the excessive withholding of agency records . . . might result."  *Id.*

The IRS asserts that Exemption 7(E) applies to certain portions of the draft LILO ASG, as well as the final [redacted] version of the document as it was released to the public.  Ms. Lambert-Dean attests:

> [These portions] relate to specific predominately internal settlement guideline ranges.  The information at issue consists of an articulation of the Service's ultimate objectives, specific settlement ranges or percentages, and assessments of litigating hazards and vulnerabilities associated with the Service positions.  ASGs set parameters by which appeals officers enforce tax laws under the Internal Revenue Code, thus meeting the requirement that they be

"records compiled for law enforcement purposes."

Second Lambert-Dean Decl. ¶ 13; *see also* Lambert-Dean Decl. ¶ 44. Mayer Brown contests this description, noting that a complete draft of the LILO ASG was already released and it "contained a *complete* legal analysis of the IRS's position, including case law and legal analysis inconsistent with the IRS's published position," while the final version of the ASG appears to have all legal analysis "inconsistent with the IRS's published position" redacted and placed under headings entitled "Litigating Hazards." Pl.'s Reply at 22.

Mayer Brown relies on *The Black & Decker Corp. v. United States*, No. WDQ-02-2070, 2004 WL 500847 (D. Md. Feb. 19, 2004), in support of its position. *Black & Decker* concerned the IRS's application of Exemption 7(A), which allows withholding of records compiled for law enforcement purposes that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A) typically exempts from disclosure investigative files, but does not exempt an agency's interpretation of the law. *Black & Decker*, 2004 WL 500847 at *3. In *Black & Decker*, the Magistrate Judge ordered release of an unredacted copy of an IRS Field Service Advisory ("FSA") because the redacted material concerned the agency's interpretation of the law. *Id*. He explained:

> There can be no doubt that the redacted portion of the FSA contains pure legal analysis; it is an evaluation of pertinent statutory and case law. The redacted portion of the FSA does not reflect "investigative activities giving rise to the compilation of the records"; it reflects the "considered view of the Chief Counsel's national office on significant tax law issues." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997). The redacted portion of the FSA contains a discussion of the tax treatment of contingent liability transactions, similar to that set forth in the "Law and Analysis" portion of the FSA which has not been redacted and to which the public has access. As such, defendant [IRS] has failed to meet the threshold requirement for a valid Exemption 7(A) claim.

*Id.*

On this record, the Court cannot determine whether the contested records are subject to release because they reflect legal conclusions that cannot reasonably be expected to interfere with enforcement proceedings, *id.*, or are not subject to release 1) under Exemption 7(A) because they are records compiled for law enforcement purposes that could reasonably be expected to interfere with enforcement proceedings or 2) under Exemption 7(E) because they are guidelines for law enforcement purposes, disclosure of which would risk circumvention of the law.  In order to resolve this dilemma, the Court will direct the IRS to submit a representative sample of the records for *in camera* review.

The cross motions for summary judgment on the materials withheld under Exemption 7(E) are denied without prejudice.

### IV.  CONCLUSION

The Court finds that the IRS conducted a reasonable search for documents responsive to Mayer Brown's FOIA request.  Because the search was adequate, summary judgment will be granted to the agency on that point.  To save unnecessary future litigation, the Court will order the IRS to review and determine under FOIA 1) whether and the extent to which it will release the identified post-decisional seventeen documents and 2) to release such records, in whole or in part, as appropriate under FOIA.  To the extent that the IRS determines that these documents, or any portion thereof, should be withheld, the IRS shall provide an itemized index explaining the basis for withholding them.

Further, the Court is unable to decipher the broad categories used by the IRS in

defending its claim that the deliberative process privilege, under FOIA Exemption 5, exempts 7,456 documents from release.  The cross motions for summary judgment on these documents will be denied without prejudice, and the IRS will be given an opportunity to submit a more specific declaration.

Finally, the Court cannot determine if Exemption 7(E) applies and will order the IRS to submit representative samples of the documents for *in camera* review.  The cross motions for summary judgment on these documents will be denied without prejudice.

No later than September 1, 2006, the parties shall submit a joint proposed scheduling order, setting forth proposed deadlines for the IRS actions required by this Memorandum Opinion. A memorializing order accompanies this Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE:  August 21, 2006