**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MAYER, BROWN, ROWE & MAW LLP,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | **Civil Action No. 04-2187 (RMC)** |
| **INTERNAL REVENUE SERVICE,** | ) ) | |
| **Defendant.** | ) ) ) | |

**MEMORANDUM OPINION**

This is a FOIA[1] case concerning three requests for documents submitted to the

Internal Revenue Service ("IRS") by Mayer, Brown, Rowe & Maw LLP ("Mayer Brown"), a law

firm. Mayer Brown wanted to obtain documents on the background to two revenue rulings, certain

settlement guidelines, and an official IRS notice. After several years of litigation, and a prior

decision by this Court,[2] the dispute over approximately 30,000 documents has resolved to only 27.

Both parties move for summary judgment. *See* Dkt. ## 38 & 40. The Court will grant the motions

of the parties in part and deny them in part.

**I. BACKGROUND FACTS**[3]

The documents at issue concern the tax treatment accorded by the IRS to LILOS, or

---

[1] Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

[2] *See* August 21, 2006 Memorandum Opinion ("Mem. Op.") [Dkt #24].

[3] The Court directs the reader to its prior opinion for a more extensive background to this
case. *See supra* note 2.

lease-in/lease-out transactions.  Under these LILOS, a transit agency would lease transit equipment

to a lessor for an extended period under a "Headlease."  *See* Memorandum Opinion ("Mem. Op.")

at 2.  The transit agency would then lease the property back under a Lease for a period significantly

shorter than the terms of the Headlease. *See id*. at 2.  According to Mayer Brown, the LILO structure

was used as a financing method by transit agencies in a number of cities, including San Diego,

Washington, D.C., and Dallas, among others.  *Id.*  Following an IRS revenue ruling that disallowed

deductions for LILO transactions, lessees and lessors increased the use of sale-leaseback structures.

In a sale-leaseback (called sale in/lease out, or "SILO" by the IRS), the original owner of transit

equipment would sell it and then lease it back. *Id*.

    Mayer  Brown  sought  information  regarding  two  revenue  rulings,  settlement

guidelines, and an IRS Notice.  Specifically, in Revenue Ruling 99-14, 1999-1 C.B. 835, issued in

March 2002, the IRS disallowed deductions claimed with respect to LILO transactions.  In October

2002, the IRS issued Revenue Ruling 2002-69, 2002-2 C.B. 760, which modified and superseded

Revenue Ruling 99-14, but maintained the same position disallowing deductions.  Then in February

2004, the IRS released Appeals Settlement Guidelines ("ASG") on LILO transactions.  Legislation

which substantially increased the penalties and sanctions for failing to comply with tax shelter rules

was enacted on October 22, 2004.  See American Jobs Creation Act of 2004, Pub. L. No. 108-357,

118 Stat. 1418 (codified in scattered sections of 26 U.S.C.).  On February 11, 2005, the IRS issued

Notice 2005-13, which disallowed tax deductions with respect to SILO transactions.  *See* Sloane

Decl., Ex. G.  The IRS has not published Appeals Settlement Guidelines for SILO transactions.

## II.  LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inference in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Harrison v. Executive Office for U.S. Attorneys,* 377, F. Supp 2d 141, 145 (D.D.C. 2005); *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, the court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). An agency must demonstrate that "each document that falls within the class requested either has been produced,

is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). "'Disclosure, not secrecy, is the dominant objective' of FOIA's statutory scheme." *Army Times Publ'g Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1070 (D.C. Cir. 1993) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). A defendant in a FOIA action is entitled to summary judgment if the defendant proves that it has fully discharged its obligations under the Act. *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In determining whether the defendant agency has met its burden, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

### III.  ANALYSIS

In response to each of Mayer Brown's pleadings, the IRS has released more documents and submitted successive affidavits from Deborah Lambert-Dean explaining its reasons for not releasing more. Ms. Lambert-Dean is an attorney in the Office of Chief Counsel at the IRS, who is responsible for coordinating the defense of the IRS with the Department of Justice in this case. *See* 6th Declaration of Deborah Lambert-Dean ("6th Decl.") ¶¶ 1&2. On each occasion, Ms. Lambert-Dean has more fully explained the agency's position and refined her analysis. At this mature stage of the litigation, the only matter before the Court is the IRS's withholding of records under the deliberative process privilege incorporated into FOIA exemption 5. *See* Mayer Brown's Renewed Mot. for Summ. J. ("Pl.'s Mem.") [Dkt. #38] at 2.

This privilege "encompasses 'documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions

and policies are formulated, as well as other subjective documents that reflect the personal opinions of the writer prior to the agency's adoption of a policy.'" *Tax Analysts v. IRS*, 294 F.3d 71, 80 (D.C. Cir. 2002) (quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981)). "To withhold a responsive document under the deliberative process privilege, the agency must demonstrate that the document is 'both predecisional and deliberative.'" *Reliant Energy Power Generation v. Fed. Energy Regulatory Comm'n*, 520 F. Supp. 2d 194, 203 (D.D.C. 2007) (citing *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993)). A communication is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "While the deliberative process privilege serves a number of related purposes, its 'ultimate aim' is to 'prevent injury to the quality of agency decisions.'" *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1433-1434 (D.C. Cir. 1992) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)). The deliberative process privilege is highly "dependent upon the individual document and the role it plays in the administrative process." *Coastal States*, 617 F.2d at 867.

### A. Adoption, Incorporation, and Working Law

Mayer Brown challenges the repeated statements in Ms. Lambert-Dean's Fourth Declaration that "[n]othing on the face of these documents indicated that the recommendations or conclusions contained in these documents were adopted, directly or indirectly, or incorporated by reference, by any final agency decision maker." It argues that "one would not expect a document to state whether it was incorporated by *other documents*." Pl.'s Mem. at 11 (emphasis in original). Because "[t]he Agency must . . . carry the burden of establishing that documents contain the ideas

and theories which go into the making of the law and not the law itself," *Arthur Anderson & Co. v.*

*IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982), Mayer Brown believes the IRS must produce evidence that

the allegedly predecisional documents were not incorporated into final documents or made part of

some internal "secret or working law"[4] relied on by IRS lawyers and agents.   The IRS bitterly

protests that Mayer Brown, as plaintiff, bears the burden of proof on the issue.

This interesting point of law has been mooted by Ms. Lambert-Dean's 6th

Declaration, in which she clarifies:

> I am unaware that any of the opinions or analysis contained in the
> documents described in my Fifth Declaration as being withheld pursuant to
> FOIA exemption 5 and the deliberative process privilege have been
> expressly or informally adopted or incorporated by reference in an agency
> position, referred to in a precedential fashion, used by the agency in its
> dealings with the public or otherwise treated as if they constitute agency
> policy.

6th Decl. ¶ 6. Inasmuch as Ms. Lambert-Dean has been the coordinator on this lawsuit since its

inception and has repeatedly "personally reviewed . . . all the documents at issue," *id.* at ¶ 3, the

Court finds that there is an absence of proof that these documents have been adopted, directly or

indirectly, as secret or working law and that summary judgment on the point should be granted to

the IRS.

---

[4]  *See Sec. Fin. Life Ins. Co. v. Dep't of Treasury*, No. Civ. 03-102 (SBC), 2005 WL
839543, at *7 (D.D.C. Apr. 12, 2005) ("Cases that have addressed whether an agency informally
adopted a predecisional document have focused on whether the documents are used by an agency
as secret or working law") (citing *Tax Analysts*, 294 F.3d at 81.).

**B. Training Slide and Cover E-mail (pp. 6016-6017 )**[5]

The IRS withheld in part material on one slide and a cover email from Chief Counsel

LMSB field personnel to National Office Counsel attorneys for review.  The slide was developed

"for a training presentation for agency personnel with respect to Revenue Ruling 2002-69."  6th

Decl. ¶ 7.a.  The Revenue Ruling "was still in the finalization process and had not yet been issued."

*Id.*  The IRS does not argue that the slide in question was predecisional to the Revenue Ruling itself.

Rather, Ms. Lambert-Dean states that "[t]he deliberative process that is being protected by the non-

disclosure of the withheld portions from these two pages is the process by which the agency

deliberated and determined what information the slide should and should not convey to a wider

audience." *Id.*  What is withheld "consists of a summary discussion of alternative legal arguments

that need[ed] further development within the agency."  *See* Dkt. # 40, 5th Decl. at 4.

A document is predecisional if it is "'generated before the adoption of an agency

policy.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (*quoting Coastal States*,

617 F.2d at 866; *see also Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (*en*

*banc*).  The courts do not necessarily look to a specific, final agency decision, but emphasize that

agencies engage in ongoing examinations and re-examinations of policies.  Thus, "[a]gencies are,

and properly should be, engaged in a continuing process of examining their policies; this process will

generate memoranda containing recommendations which do not ripen into agency decisions; and

lower courts should be wary of interfering with this process." *Sears, Roebuck & Co.*, 421 U.S. at

---

[5] As with the parties' convention, the Court identifies each document specifically by the number given it by the IRS.  The Court by Minute Entry Order dated February 27, 2008, ordered Defendant IRS to submit 27 documents for *in camera* review.  The Court's decision with respect to these documents is based on the review of those documents in light of the FOIA exemptions.

151 n.18; *see also Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C. Cir. 1991).

The slide and cover e-mail at issue here were *not* prepared to assist in the formulation of any agency policy or decision regarding Revenue Ruling 2002-69.  They were intended to brief IRS employees once the Ruling was issued.  This raises a serious question of whether they are protected from disclosure by the deliberative process privilege.  *See Sukull Valley Band of Goshute Indians v. Kempthorne*, Civ. No. 04-339 (CKK), 2007 WL 915211, at *2 (D.D.C. Mar. 26, 2007) ("Because Exemption 5's goal is to 'prevent injury to the quality of agency decisions,' the deliberative process privilege can only apply to deliberative processes the results of which are or will be [or may be] agency policy") (*quoting Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).

An agency must identify the "final decisions or decisionmaking processes" to which a document contributed.  *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004).  Ms. Lambert-Dean has identified a decisionmaking process: "what information the slide should and should not convey to a larger audience."  6th Decl. ¶ 7.a.  Mayer Brown responds that the redactions pertaining to the slide presentation "were flagging as yet-unresolved points that would need to be included in a slide presentation explaining and interpreting a *completed* policy process [and not] . . . to foster deliberations within the agency on the underlying policy or decision."  See Pl.'s Opp'n to IRS's Renewed Mot. for Summ. J. and Reply in Supp. of Mot. for Summ. J. (Pl.'s Opp'n) [Dkt. #47] at 11.

Ms. Lambert-Dean's declaration evidences why Exemption 5 does not cover the pages at issue.  She points out that the "drafters of this slide presentation had not been intimately involved in the drafting of the Revenue Ruling," and that "they wanted to reach out to their superiors

to ascertain whether what they were representing in the slide were actually the positions reflected in the Revenue Ruling." 6th Decl. at 3-4. "Predecisional documents are thought generally to reflect the agency 'give and take' leading up to a decision that is characteristic of the deliberative process; whereas post-decisional documents often represent the agency's position on an issue. . ." *Taxation With Representation Fund,* 646 F.2d at 678. The Court disagrees with Defendant when it asserts that "the deliberative process that is being protected by the non-disclosure of the withheld portions from these two pages is the process by which the agency deliberated and determined what information the slides should and should not convey to a wider audience." *Id.* This is too removed from an actual policy decision. Summary judgment on this point will be granted to Plaintiff, and the IRS must produce unredacted copies of pages 6016 and 6017.

### C. Anonymous Memo re LILO ASG (pp. 1464-1467)

The author of this particular document is unknown but may be Nick DeNovio or Jon Zelnick, who were Special Counsels in the Office of Chief Counsel when the final Lease In/Lease Out Appeals Settlement Guidelines ("LILO ASG") were adopted. *Id.* ¶ 7.b. There is only one version of this document and David O'Connor, the only Special Counsel who was in the Office of Chief Counsel at the time and remains with IRS, has never seen it before. *Id.* Ms. Lambert-Dean attests:

> There is no evidence this document was shared among the author's colleagues or superiors. There is nothing to indicate that any of the opinions expressed in this document were ever incorporated in instructions to persons involved in settlement of LILO transactions. Nor is there any evidence that this document was shared with persons within the agency who had decision-making authority with respect to the settlement or designation for litigation of LILO cases. . . . I have no evidence that it was shared with anyone.

*Id.* "[T]his document was created after the LILO ASG was finalized by an employee of Chief Counsel in an attempt at clarifying the settlement ranges specified in that document. . . . [It] represents the opinion and views of the author . . . ." 5th Decl. at 6.

A document that is not shared with anyone else could not contribute to the decision process of agency policymaking except in its most existential terms: the unknown author might have coalesced his own thoughts through the process of writing them down and then, later and in a different document, contributed his mature ideas to the development of policy. It is thus difficult to see how this document might be considered "predecisional" in the context of Exemption 5. In fact, its timing makes it post-decisional as to the LILO ASG. IRS seems to assert that this post-decisional document should be exempt because it reflects the writer's opinions, but "the deliberative process privilege does not support withholding material simply because it contains [the author's] opinions; the fact that a document expresses its authors [sic] views is not dispositive if the agency has neither identified the deliberative process to which the document contributed nor explained how the materials are pre-decisional." *ICM Registry, LLC v. U.S. Dep't of Commerce*, Civ. No. 06-0949 (JR), 2007 WL 1020748, at \*8 (D.D.C. Mar. 29, 2007). Further, in making a determination of whether a document is properly withheld under Exemption 5, "courts frequently examine whether 'the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest communication within the agency.'" *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 15 (D.D.C. 2004) (quoting *Coastal States*, 617 F. 2d at 866). "However, in cases where there is no identifying information that would link an individual to a document, this potential is unlikely." *Wilderness Soc.,* 344 F. Supp. 2d at 15. Ms. Lambert-Dean's declaration does not identify a relevant

decisional process nor does it explain how the document is predecisional, so summary judgment with

respect to documents 1464-1467 will be granted to Mayer Brown.

### D. Handwritten Notations on Released Article (pp. 3417 and 3247)

In her 6th Declaration, Ms. Lambert-Dean describes what is being withheld from

these pages as:

> handwritten notations made in the margins of an article written by Kenneth
> Kies and released to the plaintiff. This article had been provided to the IRS
> prior to finalization of the LILO ASG and was read and considered by those
> personnel within the agency who were involved with the drafting of the
> LILO ASG. The notations that have been withheld as predecisional data
> represent the author of the notations['] opinions and questions with respect
> to the analysis provided in the article. These questions and opinions were
> related to issues that the agency personnel debated and tried to address and
> resolve while working toward the finalization of the LILO ASG.

6th Decl. ¶ 7.c.

The Court finds that the IRS has sufficiently explained the nature of the withheld

notations, the policy decision process to which they contributed, and the predecisional nature of the

writings. *See Judicial Watch, Inc. v. Reno*, 154 F. Supp. 2d 17, 18 (D.D.C. 2001). Therefore,

summary judgment will be granted to the IRS as to the handwritten notations on pages 3417 and

3429.

### E. David O'Connor Handwritten Notes (p. 1215)

> This document reflects notes that Mr. O'Connor was making with respect
> to a specific transaction as he was studying that transaction. It reflects those
> aspects of the transaction that he considered significant and worthy of more
> study and analysis as the agency debated how best to address LILO
> transactions as the agency moved forward toward the issuance of the LILO
> ASG. Mr. O'Connor was highly involved in the creation of agency policy
> for addressing LILO transactions that ultimately resulted in the issuance of
> the LILO ASG. It is likely that he was reviewing documents associated
> with a transaction and making notes . . . so that he could . . . elaborate on

the issues as he considered how to address these issues in the LILO ASG.

6th Decl. ¶ 7.d.

Given Mr. O'Connor's unchallenged central role in the development of the LILO ASG, the Court considers his personal notes from relevant background documents to be quintessential predecisional documents. Summary judgment will be granted to the IRS with respect to page 1215.

### F. Anonymous Handwritten Notes re LILO Transaction (p. 4288)

This document predates Revenue Ruling 2002-69 and reflects the personal notes of an unknown IRS employee reviewing a LILO transaction. *Id.* ¶ 7.e. Ms. Lambert-Dean says it is "likely" that the author was "making notes on what he was reviewing as to the questions he had about specific tax implications associated with that transaction so that he could refer to these notes as he considered how to address those issues in Revenue Ruling 2002-69 as it was being drafted." *Id.*

The Court concludes that these anonymous notes reflect the travails of an IRS employee figuring out the complexities of LILO transactions, preparatory to developing Revenue Ruling 2002-69. The learning process by which individuals within the Office of Chief Counsel developed their understanding of LILO transactions and then translated that understanding into Revenue Ruling 2002-69 would reveal the predecisional process utilized by the agency. Inasmuch as there is a privilege protecting predecisional documents from release under FOIA, the Court concludes that page 4288 is so privileged and can be withheld.

### G. Summary of Agency Actions (p. 6689)

A portion of page 6689, summarizing "the current status of the LILO and SILO Task

Forces," was withheld. *Id.* ¶ 7.f. The withheld portion "states what a working group of agency personnel had decided to recommend with respect to the settlement of tax issues associated with those transactions." *Id.* Also redacted is a discussion of "the status of ongoing determinations within the agency as to guidance with respect to SILO transactions and . . . issues that need to be resolved." *Id.* "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and lower courts should be wary of interfering with this process." *Sears, Roebuck & Co.*, 421 U.S. at 151 n.18. After review of page 6689, the Court determines that the document is properly partially withheld, because it does highlight recommendations that were still under consideration "as well as areas that needed more analysis" with respect to Task Force Initiatives. 6th Decl. at 7.

**H.   Drafts of Press Releases re SILO Notice (pp. 7930-31; 8048-49; 9767-68; 9781-82; 9788-89)**

These draft press releases related to the public announcement of the SILO Notice have been withheld in full. Ms. Lambert-Dean suggests that "[t]he significant differences between the final version of this press release and these draft versions indicate there was much deliberation and consideration given as to how the [IRS and Treasury] wanted the public to perceive the Notice based on the impressions that would be made from the language of the press release." *Id.* ¶ 7.h. Defendants "must . . . identify the 'function and significance . . . in the agency's decision making process" of all redacted and withheld documents to qualify them as exempt under the deliberative process privilege.'" *Wilderness Soc.*, 344 F. Supp. 2d at 14. (quoting *Arthur Anderson*, 679 F.2d at 258). "When identifying a document as a draft, the defendant must indicate whether the draft was

'(1) adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public.'" *Id*. (quoting *Judicial Watch,* 297 F. Supp. 2d at 261.

Ms. Lambert-Dean does point out "[t]he only portion of this 7 paragraph draft document that looks remotely like any of the final issued press release[sic] is the portion of that [final] issued release that discusses the American Jobs Creation Act." 6th Decl. at 8.  Under this Court's precedent, at least this portion of the documents is not subject to Exemption 5, because it was used in interactions with the public. *See Wilderness Soc.*, 344 F. Supp. 2d at 14.  Nonetheless, the Court will order that the drafts be produced in their entirety because they do not "bear on the policy formulation" involved with SILO.  *Id*.

**I.   Draft Letters to Secretary of Department of Transportation (pp. 10847; 10883; 10917; 10925; 10959; 10962; 10995).**

The Acting Deputy Assistant Secretary (Tax Policy) at Treasury desired to communicate with Norman Mineta, Secretary of the Department of Transportation ("DOT").  The purpose was to alert DOT to the SILO Notice, which identified SILO transactions as tax avoidance schemes.  "While the decision reflected in this letter, *i.e.*, the designation of SILO transactions as abusive, had been finalized at the time this letter was drafted, the manner in which this determination was to be conveyed to [DOT] was still under consideration."  6th Decl., ¶ 7.h.  The IRS and Treasury needed to be "sure the message was clear without any offense being given."  *Id.*  Changes in the drafts, "no matter how seemingly insignificant and nuanced, . . . are part of the deliberative process of the agencies as they moved toward the final signed version of this letter."  *Id.*  "This was a communication from one Cabinet level Department to another and drafting such a document can be delicate in that Treasury wanted to carefully and clearly convey the message that they no longer

wanted [DOT] to permit SILO transactions without challenging the authority of [DOT] to act in areas that fall within their subject matter expertise." *Id.*

As Ms. Lambert-Dean explains, the documents at issue are draft letters. 6th Decl. at 8. The District of Columbia Circuit has made it clear that simply designating a document as a "draft" does not automatically make it privileged under the deliberative process privilege. *Arthur Anderson*, 679 F.2d at 257. These letters must be produced because they are not the type of documents that are "a direct part of the deliberation process" and they do not "make[] recommendations or express[] opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). There is no doubt that much care must be taken when transmitting information between and among agencies, but interagency politics is not the stuff of agency policymaking. The draft letters must be produced.

**J.  David O'Connor Notes from Chief Counsel (p.12999)**

This document is titled "Summary of Thoughts of B. John Williams Following Factual Presentation re: LILO Designation." 5th Decl. at 73. The document was written by Special Counsel to the Chief Counsel, David O'Connor. Ms. Lambert-Dean in her Sixth Declaration explains that:

> [t]his document captures information that was conveyed by then Chief Counsel B. John Williams to David O'Connor following a presentation to Mr. Williams and others by field LMSB Counsel personnel concerning the designation for litigation of a LILO transaction involving a specific taxpayer. Mr. O'Connor has indicated that these notes reflect B. John Williams' concerns regarding the presentation as to shortcomings he saw in the development of factual analysis by agency personnel as they moved through the process of determining whether to designate this specific case for litigation and reflects specific areas and analysis the Chief Counsel would have like [sic] to see more fully developed by field

personnel before such designation questions were brought into the National Office for his consideration as well as areas that he thought field functions should focus more completely on as they contemplated both settlement and litigation of LILO transactions.

6th Decl. at 9-10.

Plaintiff points out that Ms. Lambert-Dean's 4th Declaration also described that the document "was meant as a reference for IRS personnel involved in the development of a response to the SILO transactions so that they could better understand how the Chief Counsel intended the agency to respond to LILO transactions." 4th Decl. at 109.  Although this particular assertion is not repeated in the 5th and 6th Declarations, it does seem to appropriately describe the document. Nevertheless, the document may properly be withheld by IRS. The Court finds that this document is analogous to those documents that the Supreme Court found were properly withheld in *NLRB v. Sears, Roebuck & Co*. 421 U.S. 132 (1975). This document is akin to the "Advice and Appeals Memoranda" the Court protected in *Sears*, because the case "will be litigated" and the "General Counsel will have the responsibility of advocating the position of the charging party."  *Sears, Roebuck & Co*., 421 U.S. at 159.   Ms. Lambert-Dean's Declaration explains that this document reflects Chief Counsel's advice and concerns regarding "the designation for litigation of a LILO transaction involving a specific taxpayer."  6th Decl. at 9-10.  A review of the document convinces the Court that Ms. Lambert-Dean is accurate on this point.  The document can properly be withheld under Exemption 5.  Summary judgment is granted for Defendant IRS as to page 12999.

### K.  Production of All Reasonably Segregable Non-Exempt Material

Mayer Brown contends that the IRS should be ordered to prepare a declaration or index that adequately particularizes the basis for segregability claims with regard to certain of the

aforementioned documents.  Specifically, Mayor Brown asserts that "Ms. Lambert-Dean [] provides

only conclusory assertions that '[a]ll non-exempt, segregable portions of this document have been

released' (*see* 5th Decl. 4, 5, 8, 17), or that '[t]o the extent there are any nonexempt portions of these

documents, those portions are so inextricably intertwined with exempt material as to be non-

segragable (*see* 5th Decl. at 20, 21, 74).'"  The law firm continues to adhere to the position that,

under the prevailing case law in this Circuit, such conclusory claims are not sufficient.  *See* Pl.'s

Mem. at 9-10; *see also* Pl.'s Reply [Dkt. #47] at 24.  The IRS counters that it has examined and

reexamined the withheld documents to produce all reasonably segregable information and has

released such information where possible.  *See* Def.'s Mem. [Dkt. #41] at 14.

In discharging its duties under FOIA, an agency must disclose "[a]ny reasonably

segregable portion of a record . . . after deletion of the portions which are exempt. . . ." 5 U.S.C. §

552(b).  FOIA's focus is on disclosure of  "information, not documents;" therefore "an agency

cannot justify withholding an entire document simply by showing that it contains some exempt

material." *Mead Data*, 566 F.2d at 260.  However, non-exempt portions of documents need not be

disclosed if "they are inextricably intertwined with exempt portions." *Id*.  The burden is on the

agency to demonstrate adequately that all reasonably segregable, non-exempt material was disclosed.

*Church of Scientology v. IRS*, 816 F. Supp. 1138, 1162 (W.D. Tex. 1993); *see also Reliant Energy*,

520 F. Supp. at 208.

Ms. Lambert-Dean in her 6th Declaration provides a more adequate description of

the bases for her claim that all segregable non-exempt information has been released from each of

the documents Plaintiff references.  The Court need not belabor the point further in light of its *in*

*camera* review and ruling as to each individual document in this Memorandum Opinion.  The Court

has found that Defendant IRS will have to produce some documents and has properly withheld others, so the later question of reasonably segregable material is moot.

## IV.  CONCLUSION

For the foregoing reasons summary judgment will be granted in part and denied in part to Plaintiff Mayer Brown.  Summary judgment will be granted in part and denied in part to Defendant IRS.  A memorializing order accompanies this Memorandum Opinion.


 

 

 

 

 

                                                                                  /s/
                                                      ROSEMARY M. COLLYER

Date: March 14, 2008                                 United States District Judge